MILLARD, Town Sup'r, v. ADAMS et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

1. MANDAMUS (§ 1*)—NATURE OF REMEDY.

Where bonds were offered for sale under the command of a writ of mandamus, this presupposes that the bonds were legally issued; for it is the primary object of the writ to compel action, and it does not create or confer powers to act, but only commands the exercise of powers already existing, and which it is the duty of the person or body proceeded against to exercise without its agency.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 1; Dec. Dig. § 1.*].

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. DRAINS (§ 19*)—DEBTS—BONDS.

A debt incurred by a town by the issue of bonds, as authorized by Drainage Law (Consol. Laws, c. 15) § 36, is no less a town obligation because the town ultimately is to be reimbursed by local assessments against the property therein, and the bonds constitute a lien upon all the taxable property of the town.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 13; Dec. Dig. § 19.*]

3. DRAINS (§ 19*)—DEBT—BONDS—VALIDITY OF ISSUANCE.

Where, in the issuance of bonds under Drainage Law (Consol. Laws, c. 15) § 36, there is a substantial compliance with the statute, minor irregularities, due to the fact of intervening litigation which prejudices the rights of no one, did not invalidate them.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 13; Dec. Dig. § 19.*]

Submission of controversy by Charles D. Millard against Walter B. Adams and others.    Judgment for plaintiff on an agreed statement of facts under Code Civ. Proc. § 1279.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and THOMAS, JJ.

J. H. Caldwell, for plaintiff.
Standish Chard (Charles K. Allen, on the brief), for defendants.

WOODWARD, J.   This action rests upon an agreed statement of facts, and is brought for the purpose of obtaining the judgment of this court as to the validity of certain bonds of the town of Greenburgh, in the county of Westchester, advertised and sold by the plaintiff as supervisor of the town to the defendants under the provisions of section 36 of the drainage law (Chapter 15, Consol. Laws) in compliance with a peremptory writ of mandamus issued out of the Supreme Court, commanding the plaintiff to sell the bonds.   The defendants have refused to accept delivery of the bonds and to pay therefor the balance of their bid, on the ground of the alleged invalidity of the bonds, and the purpose of this action is to determine the question of validity.

No question is here raised as to the regularity of the proceedings under the provisions of the drainage law, and the fact that the plaintiff has, under the command of a writ of mandamus, offered these bonds for sale, presupposes that the bonds were legally issued, for it is the primary object of the writ of mandamus to compel action.   It neither creates nor confers powers to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency.   People ex rel. Linton v. Brooklyn Heights R. Co., 69 App. Div. 549, 551, 552, 75 N. Y. Supp. 202, and authority there cited.   The whole question as to the regularity of the issue of these bonds was before the court in People ex rel. Mount Vernon Trust Company v. Millard, 133 App. Div. 139, 117 N. Y. Supp. 474, and in the proceedings forerunning that decision, and the question here presented appears to have been suggested by our discussion of the right of the appellant in that case to further pursue the litigation.   In that discussion we pointed out that the proceeding for the drainage of land, in providing a bonding scheme, had made the charge to rest upon the property benefited, and that the provision for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

bonding the towns where the lands were situated was designed to make the funds immediately available, while the landowners were permitted to have the assessments upon their property spread over a series of years. There may be in the language used some expressions which might be tortured into a suggestion that the bonds are not primarily the obligations of the town; but we think a fair reading of the opinion justifies nothing more than we intended to point out, which was that the supervisor of the town had no standing to further contest the questions presented upon the trial of the alternative writ, because the town was not, in its corporate capacity, aggrieved, because the statute in effect merely provided for a use of the credit of the town during the period allowed for the collection of the assessments against the property.

We did not suggest that as between the town and persons purchasing the bonds there was any question of the liability of the town. The bonds under the provisions of section 36 of the drainage law, in so far as they relate to third persons, are as much the obligations of the town as though they were issued for any town purpose, and they constitute a lien upon all of the taxable property in such town. The language of the statute is clear; there is no equivocation. Upon the commissioners certifying the necessary facts, it is made the duty of the supervisor to "immediately issue bonds of the town to the total amount named in such statement"; and this court has commanded him to perform this ministerial duty, after a hearing, so that there was a determination that it was a duty enjoined upon him by law, and such a duty could not have arisen if there was any valid question of the legality of the bonds. No authority is given, or attempted to be given, to issue anything other than the bonds of the town, and while it is provided in the statute that these bonds are to be paid out of the proceeds of the annual assessments laid upon the lands benefited, the purpose of the statute to make the bonds the obligations of the town is clearly manifest in the provision that:

"If in any year the amount collected from said assessments is not sufficient to pay the principal and interest of the town bonds falling due in that year there shall be levied in the next annual tax levy against all the taxable property in said town in the same manner as other town taxes are levied and collected, an amount equivalent to said deficit in the amount collected from said assessments. Said sum so collected shall be used to pay the balance of said bonds and interest then remaining unpaid."

Having had no doubt of the fact that these bonds were such as to have back of them all of the resources of the town, as much as though they were issued to construct bridges or other public improvements authorized by law, we find ourselves easily in accord with the rule of law asserted in United States v. County of Clark, 96 U. S. 211, 24 L. Ed. 628, and the discussion of the court in Horton v. Andrus, 191 N. Y. 231, 236, 83 N. E. 1120.

The fact that there are trifling details relating to the issuing of these bonds which, owing to the intervening litigation, cannot be literally complied with, does not operate to invalidate them. There is a substantial compliance with the statute in reference to the issuing, no rights of any one are prejudiced by the irregularities, and it would

lead to many disadvantages to those who have acted in good faith in reference to this public undertaking to permit any trifling matters to interfere.

The plaintiff should have judgment.

Judgment for plaintiff in accordance with the terms of the submission, without costs. All concur.