PETER F. GAYNOR et al., Appellants, *v.* WILLIAM J. MAROHN et al., Constituting the Board of Supervisors of the County of Albany, Respondents.

(Argued July 11, 1935; decided September 9, 1935.)

*Robert E. Whalen* for appellants. The act (L. 1935, ch. 842) sanctions the use of county moneys and the issuance of county bonds for other than county purposes. (N. Y. Const. art. 8, § 10; *Sun Pub. Assn.* v. *Mayor*, 152 N. Y. 257; *Village of Kenmore* v. *County of Erie*, 252 N. Y. 437; *Markey* v. *County of Queens*, 154 N. Y. 675; *County of Albany* v. *Hooker*, 204 N. Y. 1; *Loan Assn.* v. *Topeka*, 20 Wall. 655; *Matter of Chapman* v. *City of New York*, 168 N. Y. 80; *Smith* v. *Smythe*, 197 N. Y. 457; *Hesse* v. *Rath*, 224 App. Div. 344; 249 N. Y. 436; *Hequembourg* v. *City of Dunkirk*, 49 Hun, 550; *Kelly* v.

*Merry,* 262 N. Y. 151.) The act contravenes the Home Rule provisions of the State Constitution. (N. Y. Const. art. 12, § 2; *City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *Matter of Mayor of New York [Elm St.],* 246 N. Y. 72; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Adler* v. *Deegan,* 251 N. Y. 467; *Robertson* v. *Zimmermann,* 268 N. Y. 52.)

*Neile F. Towner, Randall J. LeBoeuf, Jr.,* and *Horace R. Lamb* for New York Power and Light Corporation, *amicus curiæ.* The act violates section 10 of article 8 of the Constitution by providing that the county of Albany shall loan its money and credit to or in aid of a corporation. (*Deady* v. *Village of Lyons,* 39 App. Div. 139; *Holley* v. *City of Mount Vernon,* 141 App. Div. 823; *Belt Line Ry. Corp.* v. *City of New York,* 118 Misc. Rep. 665; *Brooklyn City R. R. Co.* v. *Whalen,* 191 App. Div. 737; 229 N. Y. 570; *Syracuse & S. R. R. Co.* v. *City of Syracuse,* 113 Misc. Rep. 28; *Horton* v. *Andrus,* 191 N. Y. 231.) The act grants to the corporation an exemption from taxation of its real and personal property, in violation of the provisions of section 18 of article 3 of the Constitution. (*Kerrigan* v. *Force,* 68 N. Y. 381; *Matter of Church,* 92 N. Y. 1; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Matter of McAneny* v. *Board of Estimate,* 232 N. Y. 377; *Deady* v. *Village of Lyons,* 39 App. Div. 139.) The act in effect allows an indebtedness of certain of the municipalities in violation of section 10 of article 8 of the Constitution. (*Newell* v. *People ex rel. Phelps,* 7 N. Y. 9; *Levy* v. *McClellan,* 196 N. Y. 178; *Horton* v. *Andrus,* 191 N. Y. 231.) The act is a special or local law relating to the property and affairs of cities which is special or local in its terms and in its effect and was not passed on message from the Governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the Legislature in violation of section 2 of article 12 of the Constitution. (*Village of Kenmore* v. *County of Erie,* 252 N. Y. 437;

*Markey* v. *County of Queens,* 154 N. Y. 675; *Ohio* v. *Helvering,* 292 U. S. 360; *Smith* v. *Smythe,* 197 N. Y. 457; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110.)

*Walter L. Collins, County Attorney* (*Robert R. Reed* of counsel), for respondents. The constitutional prohibition against the loan of money or credit " to or in aid of any corporation " does not apply; the authority is a governmental agency of the State and county. (*Loan Assn.* v. *Topeka,* 20 Wall. 655; *Matter of Chapman* v. *City of New York,* 168 N. Y. 80; *Horton* v. *Andrus,* 191 N. Y. 231; *Houck* v. *Drainage District,* 239 U. S. 254; *Miller* v. *Drainage District,* 256 U. S. 129.) The purpose is a county purpose. (*Town of Amherst* v. *County of Erie,* 236 App. Div. 58; 260 N. Y. 361; *Kelly* v. *Merry,* 262 N. Y. 151; *Matter of Chapman* v. *City of New York,* 168 N. Y. 80; *Horton* v. *Andrus,* 191 N. Y. 231; *Deady* v. *Village of Lyons,* 39 App. Div. 139; *Village of Kenmore* v. *County of Erie,* 252 N. Y. 437; *Admiral Realty Co.* v. *N. Y.,* 206 N. Y. 110; *Sun P. & P. Co.* v. *Mayor of New York,* 152 N. Y. 257; *Augustine* v. *Town of Brant,* 249 N. Y. 196; *District of Columbia* v. *Woodbury,* 136 U. S. 450.) The debt authorized by the act whether bonds of the county or bonds of the authority is not a debt of the cities and other municipalities of the district or subject to the debt limitation on cities under section 10 of article 8 of the State Constitution. (*Horton* v. *Andrus,* 191 N. Y. 231; *City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *Fallbrook Irrigation Dist.* v. *Braddock,* 164 U. S. 112; *Valley Farms Co.* v. *County of Westchester* 231 N. Y. 558; 281 U. S. 155; *Roberts* v. *Irrigation Dist.,* 289 U. S. 71; *Dineen* v. *Rider,* 152 Md. 343.) The proposed act is not subversive of the constitutional classification of municipalities. (*Hudson River Reg. Dist.* v. *Railroad,* 249 N. Y. 445.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* of counsel), for State of New York. Section 2 of article

12 of the State Constitution was not intended to deprive the Legislature of the power to act in aid of larger geographic units including cities. (*Valley Farms Co.* v. *County of Westchester*, 231 N. Y. 558; *Robertson* v. *Zimmermann*, 268 N. Y. 52; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Adler* v. *Deegan*, 251 N. Y. 467.) The act does not violate section 10 of article 8 of the State Constitution. (*Longken, Inc.*, v. *City of Long Beach*, 278 N. Y. Supp. 919; *Robertson* v. *Zimmermann*, 268 N. Y. 52.) It is an unreasonable straining of the constitutional provision to bar the efforts of the Legislature at furthering the public welfare by preventing the creation and the functioning of public benefit corporations through the application of section 10 of article 8 of the State Constitution. (*Sun Printing Assn.* v. *Mayor*, 152 N. Y. 257; *Loomis* v. *Callahan*, 196 Wis. 518; *Alabama State Bridge Corp.* v. *Smith*, 217 Ala. 311; *Caldwell Bros.* v. *Board of Supervisors*, 176 La. 825; *Ohio Traction Co.* v. *Howe*, 41 Ohio App. 337; *Town of Amherst* v. *Erie County*, 236 App. Div. 58; *Spain* v. *Hall County*, 165 S. E. Rep. 612; *Foster* v. *Commissioners of Cowlitz County*, 100 Wash. 502; *Board of Directors of Jefferson County Bridge District* v. *Collier*, 104 Ark. 425; *McWilliams* v. *Smith*, 142 Ga. 209; *Huskill* v. *Knox County*, 132 Tenn. 180; *State ex rel. Barnett Nat. Bank* v. *Thursby*, 150 So. Rep. 252; *Bevis* v. *Wright*, 31 Idaho, 676; *Chambers* v. *Gilbert*, 17 Tex. Civ. App. 106; *Erskine* v. *Steele County* 87 Fed. Rep. 630.) The Legislature remains vested with the power to determine what are proper county purposes and how they may be best carried out. (*Matter of 34th St. R. R. Co.*, 102 N. Y. 343; *People ex rel. Simon* v. *Bradley*, 207 N. Y. 592.) There is ng clear constitutional barrier to the authorization by the Legislature of a governmental agency to perform the functions vested in the " Albany Light, Heat and Power Authority " by the act. (*Jones* v. *Portland*, 254 U. S. 217; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *City of New York*

v. *Village of Lawrence*, 250 N. Y. 429; *Horton v. Andrus*, 191 N. Y. 231; *Valley Farms Co. v. City of Yonkers*, 193 App. Div. 433; 231 N. Y. 558; 261 U. S. 155.)

CRANE, Ch. J. This action has been brought by taxpayers, under section 51 of the General Municipal Law (Cons. Laws, ch. 24), seeking to restrain the defendants, members of the Board of Supervisors of Albany county, from taking any steps to carry out the provisions of chapter 842 of the Laws of 1935 of the State of New York. The complaint alleges that the act is unconstitutional for various reasons, principally that it violates section 10 of article VIII, prohibiting a county from loaning its money or credit except for county purposes, and section 2 of article XII, known as the Home Rule provision.

After answer the defendants moved for judgment on the pleadings. The motion was granted and the complaint dismissed. The appeal has been taken directly to this court, pursuant to section 588 (Subd. 3) of the Civil Practice Act, bringing up for review the constitutional questions only.

This law under discussion creates a light, heat and power district in the county of Albany for the purpose of purchasing or establishing lighting and power plants whereby the inhabitants of the district may be furnished with light, heat and power through publicly owned and operated utilitities.

Before analyzing the somewhat lengthy act let us meet at the threshold the main objection which strikes at the heart of the whole matter and which is, that the Legislature cannot authorize a county to purchase and operate a light or power plant; that it is not a county purpose. While it is true that the counties and towns originally have been political or governmental divisions of the State, created for the purpose of carrying out certain State functions, and that they have been distinguished from cities and villages in that these latter have certain private or proprietary rights as distinguished from governmental

duties, yet I find nothing in the Constitution which limits the Legislature in imposing upon counties or towns or any other district the right and authority as an agent of the State to carry out and perform a State function or purpose. (*Markey* v. *County of Queens*, 154 N. Y. 675; *Porter* v. *Shields*, 200 Penn. St. 241; 4 Dillon on the Law of Municipal Corporations [5th ed.], § 1374.) That the State itself may build and operate light and power plants is not questioned.

When we consider the extent of the State highways and the necessity for keeping them safe for night travel we must concede that the State has the power to furnish the light for this or any other public purpose. In fact the briefs in this case find no fault with the authority given to the villages or cities to establish their own light, power and heating plants (General Municipal Law, art. 14-A, § 360, subd. 2; *Kelly* v. *Merry*, 262 N. Y. 151; *Village of Grand Ridge* v. *Hayes*, 271 Ill. 431; *Putnam* v. *City of Grand Rapids*, 58 Mich. 416); but the same law by which the State gives authority to the villages and cities also includes counties. "Any municipal corporation may construct, lease, purchase, own, acquire, use and/or operate any public utility service within or without its territorial limits." I can find no restriction in the Constitution which forbids the State Legislature from using the county or town for this public purpose.

However, it is said that even if the county under these provisions of the General Municipal Law has the right to establish and operate its own lighting system, the Legislature cannot create a district or corporate power or similar body for these purposes and make the cost and expense thereof a charge upon the district served. This court has held otherwise in *Horton* v. *Andrus* (191 N. Y. 231); *Robertson* v. *Zimmermann* (268 N. Y. 52); *Town of Amherst* v. *County of Erie* (260 N. Y. 361). (See, also, *Nehasane Park Assn.* v. *Lloyd*, 167 N. Y. 431; *Jones* v. *Town of Towanda*, 158 N. Y. 438; *Webster* v. *Fargo*, 181

U. S. 394; *Schneider Granite Co.* v. *Gast Realty & Investment Co.*, 259 Mo. 153; *Dunham* v. *People*, 96 Ill. 331.)

Very early in our law the authorities recognized the value of creating districts for certain special purposes where the usual governmental agencies would not be effectual. (*Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112; *Roberts* v. *Richland Irrigation District*, 289 U. S. 71.) We have since had the water district, the sewer district and, of a later day, State functions exercised through boards, commissions or "powers." (*Sun Publishing Assn.* v. *Mayor*, 152 N. Y. 257; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110.) Below in a footnote are some of the instances.\* In other words,

---

\* See, for example, Laws of 1921, ch. 154, creating the Port of New York Authority; Laws of 1927, ch. 321; Laws of 1933, ch. 201, creating Lake Champlain Bridge Commission; Laws of 1929, ch. 594; Laws of 1930, ch. 827; Laws of 1931, ch. 380; Laws of 1933, ch. 89, creating the Niagara Frontier Bridge Commission; Laws of 1932, ch. 548; Laws of 1933, ch. 67, creating New York State Bridge Authority; Laws of 1933, ch. 68, creating the Pelham-Portchester Parkway Authority; Laws of 1933, ch. 70, creating Jones Beach State Parkway Authority; Laws of 1933, ch. 145, creating Triborough Bridge Authority; Laws of 1933, ch. 208, creating the Saratoga Springs Authority; Laws of 1933, ch. 209, creating the Thousand Islands Bridge Authority; Laws of 1933, ch. 214, creating the American Museum of Natural History Planetarium Authority; Laws of 1933, ch. 824, creating the Buffalo and Fort Erie Public Bridge Authority; Laws of 1933, ch. 232; Laws of 1935, chs. 846, 847, creating the Central New York Regional Market Authority; Laws of 1933, ch. 231; Laws of 1935, chs. 844, 845, creating the Lower Hudson Regional Market Authority; Laws of 1933, ch. 246; Laws of 1934, ch. 304, creating the Industrial Exhibit Authority; Laws of 1933, ch. 801, creating the Bethpage Park Authority; Laws of 1934, ch. 4, creating the Municipal Housing Authorities; Laws of 1934, ch. 138, creating the Henry Hudson Parkway Authority; Laws of 1934, ch. 162, creating the Marine Parkway Authority; Laws of 1934, ch. 819, creating the New York State World War Memorial Authority; Laws of 1935, ch. 349, creating the Buffalo Sewer Authority; Laws of 1935, ch. 681, relating to the creation of the Queens-Mid-town Tunnel Authority; Laws of 1935, ch. 843, creating the Albany Regional Market Authority; Laws of 1935, ch. 869, creating the Rockland-Westchester Hudson River Crossing Authority.

the State may create an agency for the purpose of carrying out a State duty or function, provided of course that it does not infringe on other provisions of the Constitution, such as the delegation of constitutional authority vested in others.

Therefore, I can see no illegality in this act in so far as it creates a district for the furnishing of light, heat and power, calling that district or jurisdiction the light, heat and power authority, and vesting in commissioners the authority to establish light, heat and power plants for the serving of the inhabitants of the district. That the money is to be raised by taxation on the property of those deemed to be benefited within the district is constitutional has heretofore been decided by this court. (*Robertson Case, supra; Longken, Inc.*, v. *City of Long Beach*, 268 N. Y. 532.) These cases also upheld the principle that the debt limit for certain municipalities specified in section 10 of article VIII of the Constitution does not apply to assessments for benefits.

Objection has been made to this law that as it provides for the possible lighting of the cities of Albany, Cohoes and Watervliet it transgressed the Home Rule provision of the Constitution, known as article XII, section 2. This requires all laws relating to the property, affairs or government of cities to be either general laws applicable in effect to all cities of the State or else to be passed by two-thirds of the members of the Legislature, upon an emergency message from the Governor.

The law we are considering is not such a one as comes within this article of the Constitution. It does not relate to the property, affairs or government of cities as those terms are used in the Constitution. It does not in any manner alter the government of a city or interfere in its municipal affairs. We do not need here to weigh the preponderance of State and local interests.

A brief analysis of this act, however, is required to point out those parts wherein we think the Legislature has gone

too far. Section 1 says that the act shall be known as the Albany Light, Heat and Power Authority Act, and that the area established, known as the light, heat and power district, shall embrace all the territory other than the towns of Berne, Knox, Rensselaerville and Westerlo. The authority is to be a body corporate and politic constituting a public benefit corporation. (General Corporation Law [Cons. Laws, ch. 23], § 3, subd. 2.)

Section 2 constitutes the board of directors, which shall consist of not more than five persons to be appointed by the Board of Supervisors of Albany county, three of which directors shall be residents of the city of Albany.

Section 3 gives to the authority power to construct or acquire, equip and operate, within or without the territorial limits of the county, structures and equipment for furnishing gas, electric current for light, heat and power to service the county or any municipality or persons in such district.

It may, by section 4, contract with the cities within the district for such service, and, by section 5, sell its surplus to other districts.

The other provisions of the act provide for the raising of revenue by borrowing money, issuing bonds or certificates of indebtedness and other obligations. It may also borrow money, if it can get it, from the Reconstruction Finance Corporation, the Federal Emergency Administrator of Public Works or any State agency.

Sections 8, 14 and 15 must be scrutinized carefully. In some respects they are inconsistent. Section 8 reads as as follows: " The bonds and other obligations of the authority shall not be a debt of the state or of the county, and, subject to section fifteen, the board shall have no power to make them payable out of any funds except those of the authority. The real and personal property of the authority shall be exempt from all taxation, and so shall all of its activities and operations, except that the owners of its bonds and other obligations shall be subject

to transfer and inheritance taxes." The exemption of course is that of a public agency.

Section 14 reads in part as follows: " The board of supervisors, when appointing the authority, may adopt a resolution providing, or it may by later agreement with the authority provide, that all properties acquired by the authority shall be acquired in or transferred to the name of the county or taken and held by the authority as a governmental agency of the county. The board of supervisors may at such time or by a later resolution provide that the county shall raise any part or all the money necessary for the purposes of this act by the issuance of county bonds. * * * Provision shall be made for the payment of any such bonds out of the revenues of the authority, but such bonds shall be a county charge and the board may if necessary levy general county taxes for the payment of the principal and interest thereof, and use the funds of the county therefor, but the county shall be reimbursed out of the revenues of the authority for any moneys so paid."

This seems to be inconsistent with section 8, which provides that the bonds and other obligations of the authority shall not be a debt of the State or of the county, and that the Board of Supervisors shall have no power to make them payable out of any funds except those of the authority. The use of the words " subject to section fifteen " renders the latter phrase meaningless, as this section 14 provides that the Board of Supervisors may at any time raise the money necessary for the purposes of this act by the issuance of county bonds. The distinction between the bonds of the authority and bonds of the county, so far as power to issue bonds is concerned, is very slight, if it exists at all.

Although the board or the authority has no power to make the obligations of the authority payable out of anything except the funds of the authority, yet the Board of Supervisors is authorized to issue bonds binding on the

county to obtain any moneys necessary to be raised for any purpose of the act. It is not for us to criticize the phraseology of this act or its purpose. We can only deal with its constitutional features. With the Legislature rests the responsibility for the methods of financing this enterprise. We need only say that this act as thus analyzed gives to the Board of Supervisors the power to issue county bonds for the purpose of creating electric light and power plants in or for this power district. That the district or the county may issue bonds payable out of the funds to be raised in the district by proper assessment upon the lands and territory benefited we have heretofore held in the cases above cited to be constitutional. The bonds of a county issued to raise money to pay for county lighting would come under no prohibition of law. Bonds issued by the county to pay for the lighting of a restricted district would be subject to the objection that the county had no right or power to use county money for this purpose and that such bonds are illegally issued. In other words, the county can use the county money for county purposes but it cannot use county money raised by taxing an excluded district to pay for the lighting or for furnishing of power within a restricted district within the county. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437.) The Legislature may create the district which it deems to be benefited. This is generally a legislative function with which the courts will not interfere unless palpably unjust. (*Webster* v. *Fargo*, 181 U. S. 394.) But property without the district cannot be taxed to pay for benefits within it. (5 McQuillin on the Law of Municipal Corporations, p. 575, §§ 2166–2169.) Only such land as is included in the district can be assessed. (*Farrington* v. *City of Mt. Vernon*, 166 N. Y. 233; *Prendergast* v. *Richards*, 2 Mo. App. 187.) Of course a county could light a particularly dark spot and make it a county charge. We are here dealing with benefit districts created by the Legislature.

In so far, therefore, as this act authorizes the county to issue bonds which would become a charge upon the property by reason of taxation within the towns of Berne, Knox, Rensselaerville and Westerlo, it is unconstitutional.

Section 15 of the act provides as follows: " § 15. Should it appear to the board of supervisors at any time that the revenue of the authority is or will be insufficient to provide for the payment of any bonds issued under this act, whether they be bonds of the authority or bonds of the county, and to reimburse the county for any moneys that it may have paid on such bonds or have advanced to the authority, the board of supervisors shall determine the amount of money necessary to be raised for such purpose, and shall levy a tax on the territory of the district and upon the several parcels of real estate in the district in an amount sufficient to produce the amount necessary to be raised as aforesaid provided that such tax shall not be levied to pay any bonds of the authority unless the authority with the consent of the board of supervisors has pledged such tax prior to the issuance of such bonds. Such tax shall be levied and apportioned upon such territory and collected from the several parcels of real estate in the district in like manner as other county taxes."

This provision, in our judgment, is not unconstitutional. The Board of Supervisors may raise money by a bond issue to enable the authority to carry out the purposes of the act and tax the property within the benefited district to repay the bonds, provided, of course, such tax has been pledged with the sale of the bonds as provided in the section. The authority or the supervisors are the agents of the State, carrying out a State purpose, and the bonds which are issued, be they called county bonds or bonds of the authority, are payable out of two sources — either from the revenues of the authority or from the tax or assessment upon the district benefited. In so far as the money to be raised for the purposes of this act comes from taxation of property without the district, or not benefited,

or money raised within the district is to pay for lighting territory without the district, it is unconstitutional.

In a word, we may state the law to be this: The State may authorize cities, villages or counties, as it has done by the provisions of the General Municipal Law, to establish lighting and power plants and systems. So, too, it may create power districts for this purpose, whether they embrace a county, or a portion of a county, or many counties, but the money to be raised for this purpose, if it is to come from taxation, must be limited to a tax or assessment upon the property benefited. For instance, the county of Albany cannot be taxed for the purpose of lighting the county of Rensselaer, which goes untaxed. What shall constitute a taxing district, and whether it be confined to, or in disregard of boundary lines of counties, townships or lesser municipalities is a matter wholly within the discretion of the Legislature. (5 McQuillin on the Law of Municipal Corporations, p. 668, § 2201.) Such a district is not inconsistent with county or town government. (*Thielen* v. *Metropolitan Sewerage Comm.*, 178 Wis. 34; *Matter of Bonds of Orosi Public Utility District*, 196 Cal. 43; 4 Dillon on the Law of Municipal Corporations [5th ed.], § 1434.)

We think, however, that these unconstitutional portions of this act may be eliminated or excised without rendering the whole act unconstitutional. It is said that the Board of Supervisors is about to meet for the purpose of authorizing the issue of county bonds. This cannot be done. Whatever bonds are issued must be sold and disposed of as a charge either upon the revenues of the authority or upon the property benefited by the act, that is, the area called and defined as the Albany Light, Heat and Power District.

We note in this act that power is given to sell excess power and light to other districts and territory, municipalities, villages, towns, without stint or limitation. The question is not before us, as to whether this " author-

ity " has the right to expend the moneys raised by taxation of the real property within the district, to establish a larger plant than is necessary to furnish light, heat and power to that district. It may be questionable whether the real estate can be taxed for the direct purpose of building a plant to light other and adjoining districts not taxed. We reserve this question, as no attempt to do this thing appears in the record. With the limitations which we have thus placed upon the act under review we reverse the decision of the Special Term by sustaining the complaint as good in so far as it attacks the provisions which we hold to be unconstitutional.

The judgment should be reversed, and the motion denied, with costs in this court and in the Special Term.

LEHMAN, O'BRIEN, CROUCH and LOUGHRAN, JJ., concur; HUBBS, J., concurs in result; FINCH, J., concurs in the opinion of Chief Judge CRANE in so far as it holds the act to be constitutional but dissents from so much of the opinion as holds portions of the act to be unconstitutional, and, therefore, votes to affirm.

Judgment reversed, etc.