Bertram Harnett, J.
Amidst a variety of procedural arid jurisdictional contentions, here lies a sophisticated legal point. Under certain circumstances, article 78 proceedings are to be transferred directly from the Supreme Court to the Appellate Division. Little authority and much confusion govern the circumstance of transferability.
This opinion reflects the notion that the article 78 review of a recorded administrative hearing is to be. transferred to the Appellate Division where the hearing was essentially j'udicial in nature and the legal direction which impelled it was found both in the by-laws of a nonprofit corporation of wide public impact and in the Federal and State Constitutions as due process.
A. USTA MEMBERSHIP DENIAL
Thomas John Gar of ano has been a professional driver in trotting races since 1969. He was a provisional member of the United States Trotting Association (USTA) until his suspension on June 30,1972. The USTA denied Mr. Garofano’s application for full membership on February 14, 1973 claiming his continued membership would not be in the best interests of harness racing or the association. More specifically, he was accused of having known of and participáted in a superfecta “ fix ” at Monticello Raceway on May 11,1972. He appealed the membership denial to the United States Trotting Association Board of Review, District No. 8-A, at Roosevelt Raceway, Westbury, New York. This resulted in a recorded hearing and decision dated August 14,1973, affirming his membership denial and banning any future membership application by him for 15 years.
*35 Mr. Garofano now brings this article 78 proceeding claiming that the USTA determination was arbitrary, without any supportive evidence, and in violation of his constitutional rights to due process of law.
The USTA has moved to dismiss the article 78 proceeding as being without proper personal jurisdiction over it, and for failure to state a cause of action.
B. JURISDICTION OVER USTA
The USTA is incorporated in Ohio with its principal office location in Columbus. It has not filed for authorization to do business in New York. It has 40,000 members who, by the association’s own estimate, “ comprise virtually all persons who own Standardbred horses, all drivers and trainers of harness horses, all harness racetracks and all persons whose interests in harness racing cause them to seek membership in the Association ”. It grants annual licenses to member drivers, trainers, and racing officials. Plainly, there is substantial trotting horse racing activity in New York State.
The pivotal question for jurisdictional purposes is whether the USTA itself transacts any business in New York. A foreign nonprofit corporation not authorized to do business in New York is not subject to personal jurisdiction in this State unless it has requisite contacts here. If it transacts any business in this State, it may be attached personally in New York. (CPLR 302, subd. [2], par. 1.) It would then be subject to service of process as if it were an authorized corporation. Under these circumstances, section 307 of the Not-For-Profit Corporation Law provides for service by (1) serving the Secretary of State of New York; and (2) mailing, by registered mail, return receipt requested, to the corporation’s post-office address. In this case, the petitioner employed both methods of service.
On the face of this record, there can be no doubt that the USTA transacts business in New York, generally, and did so in this very instance. (De Nigris Assoc. v. Pacific Air Transp. Int., 38 A D 2d 363; Gordon v. Braniff Airways, 55 Misc 2d 125.) The very conduct of hearings and disciplinary proceedings is part of the association’s business. Membership application proceedings emanated from association district 8-A, located at Roosevelt Raceway. The suspension and membership denial came through district 8-A. The board review also took place in District 8-A. Part of the conduct which is the object of USTA membership and regulation, the racing of trotting horses, is in the State of New York. And, the USTA works “ in close conjunction with ” the New York State Racing Commission.
*36 The TJSTA relies upon the general rule that service “ without the state ’ ’ must be effected in the same manner as required “within the state”. (CPLR 313.) But, that over-all principle is of no avail here. The special statutory rule applicable to foreign not-for-profit corporations that transact business in New York supplants any general requirement for personal service, so long as minimum requirements of notice and opportunity to be heard are met. (See Matter of La Belle Creole Int. v. Attorney-General of State of N. Y., 10 N Y 2d 192, 197.) Here, the USTA has not denied receiving the mailed process nor having full notice of these proceedings.
Accordingly, the court finds that the TJSTA was validly served. The motion to dismiss for lack of personal jurisdiction is denied.
C. DOES MR. GAR0EA1TO STATE A CASE ?
Mr. Garofano’s basic contention here is that there was no evidence, or patently insufficient evidence, that he participated in the fixing of any race. The USTA made a contrary determination based upon proof given at a hearing. When testing the strength of the petition, we must assume the truth of the facts stated in it, and all reasonable inferences from those facts. (Semple v. Miller, 38 A D 2d 174; People ex rel. Brooklyn Union Gas Co. v. Miller, 253 App. Div. 162; cf. CPLR 409, subd. [b].)
We find that a valid claim is stated for which (if proven) relief may be granted in an article 78 proceeding. The USTA is a licensing and regulating ‘ ‘ body ’ ’ with substantial impact in a public activity whose determinations are subject to judicial review. (See Jacobson v. New York Racing Assn., 41 A D 2d 87, mod. 33 N Y 2d 144.) It is subject to New York jurisdiction. If, as stated, there was not sufficient proof of Mr. Garofano’s being involved in the “fix”, the denial of his membership could be improper and could be remedially corrected by judicial action. (See Matter of Paglia v. Staten Is. Little League, 38 A D 2d 575; Matter of Spiegelman v. Engineers Country Club, 64 Misc 2d 747.) .
To characterize this dispute, as does respondent, as a purely internal battle over association membership, is to ignore the real, public, and abiding impact of membership in the corporation. (See Matter of Auer v. Dressel, 306 N. Y. 427; Matter of Rice v. Flushing Hosp. and Dispensary, 266 App. Div. 689.)
The motion to dismiss for failure to state a cause of action is therefore denied. Respondent shall serve and file its answer in compliance with subd. -(f) of CPLR 7804. (Matter of Civil Serv. Employees Assn. v. Helsby, 31 A D 2d 325, 331; Matter of Marthann Realty Co. v. Meade, 59 Misc 2d 274, 276.)
*37 D. TRANSFER TO APPELLATE DIVISION
The only remaining question is whether this action should be transferred to the Appellate Division pursuant to subd. (g) of CPLR 7804. The answer lies both in the nature and circumstances of the hearing, and the direction of law under which it is held.
In essence, article 78 proceedings must be transferred where they challenge a determination as being without substantial evidence on the record, after a hearing “ at which evidence was taken, pursuant to direction by law ”. (CPLR 7803, subd. 4.) As indicated in Matter of Kaplan v. Kinzler, 77 Misc 2d 507, 509): “ The degree of procedural protection and the opportunity to present, and contest, evidence at the hearing determine whether a dispute over substantial evidence presented must be transferred to the Appellate Division ”.
The novel issue here is the transferability of such a proceeding when it has been conducted by a foreign corporation under its own by-laws and without any explicit statutory requisite.
Two “ directions ” mandate the USTA hearing procedures followed.
1. “ DIRECTION ” BY USTA REGULATION
The USTA has its own charter, by-laws, and rules and regulations. In the membership applicant’s appeal to the district board of review, section 7 of article IV of the association by-laws provides for a “notice of complaint and hearing ’ ’ within 10 days of receipt of the appeal complaint. Under section 11 of article IV, each party is entitled to counsel, and testimony is all taken under oath with a complete stenographic record made. Affidavits may be accepted as may answering affidavits. The 82 page transcript of the hearing held here reflects a complete opportunity by both sides to cross-examine adverse witnesses and to rebut damaging exhibits.
The nature of the prescribed review hearing is therefore formal with a full panoply of notice and evidentiary procedures.
The “ direction ” of the association by-laws has the impact of law. These by-laws and rules of the association, a nonprofit corporation, have a binding effect upon association conduct. (Model, Roland & Co. v. Industrial Acoustics Co., 21 A D 2d 70, affd. 16 N Y 2d 703; Weissman v. Birn, 56 N. Y. S. 2d 269, affd. 270 App. Div. 757, app. den. 270 App. Div. 809.)
*38 2. U DIRECTION ” BY DUE PROCESS
A second ‘ ‘ direction of law ’ ’ is found in the fundamental mandate of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.
The USTA is a quasi-public, nonprofit body whose activities are intertwined with State-sponsored harness raceway activity in each jurisdiction. It possesses, by its own statements, a virtual monopoly upon trotter-driver memberships. Its activities are so involved with the public interest and agential supervision of a spectator sport with dramatic and serious public impact, that its determinations must be characterized as sufficiently resembling “ State ” or “ governmental ” action. (See Jacobson v. New York Racing Assn., 68 Misc 2d 991, mod. 41 A D 2d 87, mod. 33 N Y 2d 144, supra; Matter of Ryan v. Hofstra Univ., 67 Misc 2d 651; cf. Burton v. Wilmington Parking Auth., 365 U. S. 715, 725.)
The association action at issue here is Garof-ano’s banishment from membership for a period of 15 years. We must also bear in mind that Mr. Garofano had been a provisional member, and earned his livelihood as a driver under that membership, for three years before his suspension and banishment. The impact of this determination is substantial as affecting the man’s ability to make his living, not just in New York, but anywhere in the United States or Canada. It touches upon a basic property right. (See Goldberg v. Kelly, 397 U. S. 254.) Even though no formal tie may exist between access to trotter driving tracks and USTA membership, the virtual monopoly resident in the association and the nationwide effect of its banishment from membership are sufficient in impact upon the individual member to invoke formal procedural protection whenever membership loss or denial is at stake.
Accordingly, the association was obligated to afford due process procedural protection in the Garofano circumstances. This constitutional “ direction of law ” stands behind the procedures followed. (See Carmody-Wait, New York Practice [2d ed.], § 145 :349, p. 191; Matter of Testa v. Wickham, 51 Misc 2d 968.)
3. TRANSFER REQUIRED
The court holds therefore that the nature of the hearing, the requirement of its being held, and the petitioner’s claim of lack of substantial evidence on the record, mandate a transfer to the Appellate Division, pursuant to subd. (g) of CPLR 7804. The principles of direct review by that important court are fully met here.